# In the United States Court of Federal Claims

No. 10-883C
Filed: June 2, 2011
**TO BE PUBLISHED**

*************************************
|   |   |
|---|---|
| DOW ELECTRIC, INC., | Bid Protest, 28 U.S.C. § 1491(b)(1); Federal Acquisition Regulations, 48 C.F.R. §§ 14.101(d), 14.301(a), 14.304(b)(1), 14.404-2(b), 14.405, 52.214-19(a), 52.214-21(b), 52.214-21(d); Motion To Dismiss, RCFC 12(b)(1); Motion For Judgment On The Administrative Record, RCFC 52.1; OSHA Regulations, 29 C.F.R. § 1910.333(a)(1); Remedies in a Bid Protest, 28 U.S.C. § 1491(b)(2). |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

*************************************

**Alan R. Peterman**, Hiscock & Barclay, LLP, Syracuse, New York, Counsel for Plaintiff.

**Jessica R. Toplin**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**MEMORANDUM OPINION AND FINAL ORDER**

**BRADEN,** *Judge.*

## I.  RELEVANT FACTUAL BACKGROUND.[1]

On July 21, 2010, the Saint Lawrence Seaway Development Corporation ("SLSDC")[2] issued Pre-Solicitation Notice No. DTSL55-10-B-C0850, announcing its intent to issue a

---

[1] The facts herein were derived from the January 14, 2011 Administrative Record ("AR 1-382").

[2] SLSDC is a division of the Department of Transportation ("DOT"), and is "a wholly owned government corporation created by statute May 13, 1954, to construct, operate and maintain that part of the St. Lawrence Seaway between the Port of Montreal and Lake Erie, within the territorial limits of the United States."  SAINT LAWRENCE SEAWAY DEVELOPMENT CORPORATION, http://www.greatlakes-seaway.com/en/management/slsdc/index.html (last visited

solicitation for bids to perform work on the electrical systems at the Eisenhower and Snell Locks on the St. Lawrence River in Massena, New York. AR 30-31. On August 5, 2010, SLSDC issued Solicitation No. DTSL55-10-B-C0850 (the "Solicitation"), requesting bids to perform an electrical distribution upgrade at the Eisenhower and Snell Locks (the "Project"). AR 33. The Solicitation announced that there would be a sealed bidding process, and required all bids to be submitted by September 8, 2010. AR 34. The Solicitation further stated that the successful bidder would be "responsible for providing all equipment required to perform the work, consistent with the requirements of the Technical Provisions" of the Solicitation. AR 41. If a bidder planned to use materials other than those specified in the Solicitation, the bidder was required to "submit with [its bid], model numbers and specifications for 'equal' materials." AR 43. After all bids were submitted, SLSDC would "evaluate bids in response to [the Solicitation] without discussions and . . . award a contract to the responsible bidder whose bid, conforming to the [S]olicitation, [would] be most advantageous to [SLSDC], considering only price and . . . price related factors." AR 83. On August 31, 2010, SLSDC issued an Amendment to the Solicitation. AR 32.

On September 8, 2010, Dow Electric, Inc. ("Dow Electric") submitted a sealed bid to SLSDC in the amount of $671,569 that was the low bid. AR 134. S&L Electric ("S&L") was the second lowest bidder, with a bid of $753,400. AR 134. On that same date, Ms. Nancy Scott, the SLSDC Contract Specialist, requested additional information from Dow Electric regarding the 'equal' materials it proposed. AR 141. On September 9, 2010, Ms. Scott contacted Dow Electric again to request the specifications for the 'equal' materials. AR 141.

On September 13, 2010, Ms. Scott spoke with Dow Electric's President, Robert Dow, about SLSDC's need to review Dow Electric's proposed materials before a contract could be awarded. AR 141. On September 14, 2010, Ms. Scott advised Mr. Dow that SLSDC needed to have Dow Electric's specifications for the proposed substitute materials by September 15, 2010 at 8:00 a.m. AR 141. On that same date, Dow Electric submitted this information. AR 142.

On September 20, 2010, Ms. Scott provided Dow Electric with a preliminary review of its equal materials that was prepared by Richard Price, SLSDC's technical representative for the Solicitation. AR 300. Mr. Price's review identified a number of discrepancies between the specifications of the substitute materials proposed by Dow Electric, and those identified in the Solicitation. AR 302. On that same date, Dow Electric sent Mr. Price's review to Mr. Craig Campbell, the Industrial Solutions Representative for General Electric ("GE") who prepared the bill of materials that Dow Electric submitted to SLSDC, for Mr. Campbell to review and comment on any discrepancies. AR 304.

On September 22, 2010, Mr. Price and Mr. Campbell had a telephone conference in which they discussed the substitute materials proposed by Dow Electric. AR 303.

On September 23, 2010, Ms. Scott sent an e-mail to Mr. Dow to let him know that, after Mr. Price's review of Dow Electric's proposed substitute materials and subsequent discussion

---

May 12, 2011).

with Mr. Campbell from GE, SLSDC determined that Dow Electric's proposed panelboards and breakers did not meet the Solicitation's required specifications. AR 305. SLSDC gave Dow Electric until the close of business that day to provide SLSDC with a written response explaining how its proposal met the Solicitation's requirements, otherwise Dow Electric's bid would be considered nonresponsive. AR 305.

On September 24, 2010, Dow Electric sent SLSDC a written response prepared by GE that addressed the discrepancies identified in Mr. Price's September 20, 2010 preliminary review, and offered to change some of the proposed equipment at no additional cost. AR 307-10. On that same date, SLSDC's Contracting Officer (the "CO") requested more information on the GE panelboards that Dow Electric proposed to use. AR 314. On September 27, 2010, the CO informed Dow Electric that, if SLSDC did not receive this additional information by the end of the day, SLSDC would deem Dow Electric's bid nonresponsive and proceed with the next lowest bidder. AR 314. Later that day, GE sent the requested information to the CO. AR 318.

On September 28, 2010, the CO informed Dow Electric that SLSDC determined that Dow Electric's bid was nonresponsive because "[t]he originally quoted GE Spectra Bolt-On Panels submitted by Dow Electric do not provide the plug-on feature provided by the Square D I-Line panel that was specified [in the Solicitation] on an 'or equal' basis." AR 324. Specifically, the GE panelboards proposed by Dow Electric did not conform to SLSDC's stated requirements for four reasons:

> 1. It is not as safe for the employees to install breakers in or to remove breakers from the GE panel as with the Square D I-Line panel specified. The GE bus bars are exposed when the panel is open allowing for possible inadvertent contact. Additionally, the I-Line breakers are plugged on from the side using a ratcheting motion onto concealed bus bars. You can ratchet the breaker in or out from the side (not from directly in front). With the GE panel, you must be directly in front of the exposed bus bars when you engage the chassis.
>
> 2. When the chassis is removed to replace or add a breaker, the breaker on the other end of the chassis needs to be disconnected (an additional circuit de-energized) so it can be removed with the chassis.
>
> 3. Different size chassis need to be stocked in addition to spare breakers.
>
> 4. The breakers come in different sizes (4.5 in., 6 in., 7.5 in. and 9 in.). If you have a 4.5 in. breaker installed in a chassis, you cannot install a larger breaker across from it in the same chassis.

AR 324-25.

On September 30, 2010, SLSDC accepted S&L's bid, which proposed to use the Square D panelboards specified in the Solicitation. AR 328-29, 372. On October 1, 2010, SLSDC issued a Notice of Award to that effect. AR 374.

## II.     PROCEDURAL HISTORY.

On November 17, 2010, Dow Electric ("Plaintiff") submitted a Pre-filing Notification to the United States Court of Federal Claims, pursuant to RCFC Appendix C.  On December 28, 2010, Plaintiff filed a Complaint ("Compl."), alleging that SLSDC acted in an arbitrary and capricious manner in determining that Plaintiff's bid was non-responsive.  Compl. ¶¶ 14, 16.  The December 28, 2010 Complaint also alleges that SLSDC's refusal to accept Plaintiff's offer to perform the Project using the specified Square D panelboards at the same sealed bid price was arbitrary and capricious.  Compl. ¶¶ 15-17.  The December 28, 2010 Complaint requests preliminary injunctive relief to prevent S&L from commencing work on the Project and a declaratory judgment that Plaintiff is entitled to be awarded the Project.  Compl. ¶¶ 18-21.

On December 29, 2010, the court convened an Initial Status Conference, pursuant to RCFC App. C ¶ 8.  Therein, the court inquired as to whether SLSDC was a Non-Appropriated Funds Instrumentality ("NAFI").[3]  On December 30, 2010, the Government filed a Jurisdiction Statement to inform the court that SLSDC was not a NAFI.  On January 3, 2011, the court granted the Government's Unopposed Motion For Protective Order.

On January 3, 2011, Plaintiff filed a Motion For A Temporary Restraining Order And Preliminary Injunction.  On that same date, the court issued a Scheduling Order.  On January 6, 2011, the court convened a status conference to hear argument on Plaintiff's January 3, 2011 Motion.  Thereafter, the court issued an Order denying Plaintiff's January 3, 2011 Motion For A Temporary Restraining Order And Preliminary Injunction.

On January 14, 2011 the Government filed the Administrative Record.  On January 28, 2011, Plaintiff filed a Motion For Judgment On The Administrative Record ("Pl. Mot.").  On February 11, 2011, the Government filed a Motion To Dismiss, Cross-Motion For Judgment Upon The Administrative Record, and Response To Plaintiff's July 3, 2011 Motion ("Gov't Mot.").  On February 18, 2011, Plaintiff filed a Response and Reply ("Pl. Reply").  On February 25, 2011, the Government filed a Reply ("Gov't Reply").

## III.    DISCUSSION.

### A.     The Government's Motion To Dismiss, Pursuant To RCFC 12(b)(1).

#### 1.      The Government's Argument.

The Government argues that the court does not have jurisdiction to adjudicate the claims alleged in the December 28, 2010 Complaint, because the Complaint requests declaratory judgment that Plaintiff is "entitled to be awarded the [P]roject contract by SLSDC."  Compl. ¶

---

[3] On January 11, 2011, however, the United States Court of Appeals for the Federal Circuit abrogated prior case law that barred the United States Court of Federal Claims from adjudicating money claims against NAFIs that otherwise satisfied the jurisdictional requirements of the Tucker Act.  *See Slattery* v. *United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (*en banc*).

21. The United States Court of Federal Claims, however, does not possess jurisdiction to issue a declaratory judgment awarding an unsuccessful bidder a contract, as granting a contract is at the sole discretion of the Government agency. Gov't Mot. at 13.

### 2. The Plaintiff's Response.

Plaintiff responds that the court has the authority to grant declaratory relief "awarding a contract to the plaintiff in a bid protest action where the contract would have been awarded to the plaintiff, but for the illegal behavior of the agency." Pl. Reply at 3 (quotation marks and citation omitted). Because there is no dispute that Plaintiff was the lowest bidder, if the court determines that Plaintiff's bid was improperly rejected, the court can declare that Plaintiff be awarded the contract. *Id*. at 4.

### 3. The Court's Resolution.

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). In analyzing whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

> Congress authorized the United States Court of Federal Claims with jurisdiction:
>
> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement.

28 U.S.C. § 1491(b)(1).

When a party contests a solicitation by a federal agency, the relevant inquiry with respect to jurisdiction is whether a complaint has alleged sufficient facts to state a claim under 28 U.S.C. § 1491(b)(1). The nature of the relief the court may grant in a bid protest action is governed by 28 U.S.C. § 1491(b)(2),[4] and does not bear on the issue of the court's jurisdiction to adjudicate a bid protest action.

---
[4] Section 1491(b)(2) provides, in relevant part: "To afford relief in [a bid protest] action, the [United States Court of Federal Claims] may award any relief that the court considers proper,

The December 28, 2010 Complaint alleges that SLSDC's determination that Plaintiff's bid was nonresponsive was arbitrary and capricious because the equipment specified by Dow Electric was the functional equivalent of the equipment specified in the Solicitation. Compl. ¶ 16. Therefore, the court has determined that it has jurisdiction to adjudicate the claims alleged in the December 28, 2010 Complaint, because it alleges sufficient facts to state a claim under 28 U.S.C. § 1491(b)(1).

### B. Standing.

Although the Government's February 11, 2011 Motion To Dismiss does not challenge Plaintiff's standing, the court has an independent obligation to ascertain whether Plaintiff is an "interested party" with standing to contest the award of a federal contract. *See* 28 U.S.C. § 1491(b)(1); *see also Myers Investigative & Sec. Servs., Inc.* v. *United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue.") (citation omitted). The United States Court of Appeals for the Federal Circuit has construed the term "interested party" to be synonymous with the definition of "interested party" as defined in the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3551(2)(A). *See Rex Serv. Corp.* v. *United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing decisions adopting the CICA definition of "interested party" to convey standing under 28 U.S.C. § 1491(b)(1)). The United States Court of Appeals for the Federal Circuit subsequently has held that, to be an interested party, "a protestor must establish that: (1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement." *Distrib. Solutions, Inc.* v. *United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008).

In addition, a protestor must show that the alleged errors in the procurement were prejudicial. *See Labatt Food Serv., Inc.* v. *United States*, 577 F.3d 1375, 1378-79 (Fed. Cir. 2009) ("It is basic that because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits.") (internal quotation marks omitted); *see also Myers*, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of standing."). A party demonstrates prejudice when "it can show that but for the error, it would have had a substantial chance of securing the contract." *Labatt*, 577 F.3d at 1378. Moreover, a proper standing inquiry must not conflate the requirements of "direct economic interest" and prejudicial error. *Id.* at 1379-80 (explaining that examining economic interest but excluding prejudicial error from the standing inquiry "would create a rule that, to an unsuccessful but economically interested offeror in a bid protest, any error is harmful").

In this case, the December 28, 2010 Complaint has alleged sufficient facts to establish that Plaintiff is an "interested party," *i.e.*, was an offeror with a direct economic interest in the August 5, 2010 Solicitation, as amended. As to prejudice, the December 28, 2010 Complaint alleges that SLSDC improperly rejected Dow's bid as nonresponsive and that, but for that error, Plaintiff would have been awarded the Project since it was the lowest bidder. Compl. ¶¶ 19, 21.

---

including declaratory and injunctive relief[.]" 28 U.S.C. § 1491(b)(2).

For these reasons, the court has determined that Plaintiff has standing to seek an adjudication of the claims alleged in the December 28, 2010 Complaint in the United States Court of Federal Claims.

    **C.    Issues Raised By The Parties' Cross-Motions For Judgment On The Administrative Record.**

        **1.    Standard Of Review On A Motion For Judgment On The Administrative Record.**

Pursuant to the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), the United States Court of Federal Claims is required to review challenges to an agency decision, pursuant to the standards set forth in the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); *see also* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *Banknote Corp. of Am., Inc.* v. *United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (citations omitted).  The United States Court of Appeals for the Federal Circuit has provided the trial courts with specific guidance regarding how to analyze each of these three APA standards.

First, the United States Court of Appeals for the Federal Circuit has held that a bid award may be set aside if "the procurement procedure involved a violation of regulation or procedure." *Weeks Marine, Inc.* v. *United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009) (quotation marks and citation omitted).  The United States Court of Appeals for the Federal Circuit has clarified, however, that when a contract award is challenged based on a regulatory or procedural violation, "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Axiom Res. Mgmt., Inc.* v. *United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (internal quotation marks and citations omitted).

Second, if an award decision is challenged, pursuant to the rational basis test, the trial court "must sustain an agency action unless the action does not evince rational reasoning and consideration of relevant factors." *Savantage Fin. Servs.* v. *United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (internal alterations, quotation marks, and citations omitted); *see also Centech Grp., Inc.* v. *United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (holding that the trial court must "determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis") (internal quotation marks omitted).

Third, when a disappointed bidder challenges a federal agency for acting in an arbitrary or capricious manner, the court may set aside the procurement, but "only in extremely limited

circumstances." *United States* v. *John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983). This rule recognizes a zone of acceptable results in each particular case and requires that the final decision evidences that the agency "considered the relevant factors" and is "within the bounds of reasoned decisionmaking." *Balt. Gas & Elec. Co.* v. *Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983); *see also Weeks Marine*, 575 F.3d at 1368-69 ("We have stated that procurement decisions invoke [] highly deferential rational basis review. . . . Under that standard, we sustain an agency action evincing rational reasoning and consideration of relevant factors.") (internal quotation marks and citations omitted).

In addition, on a motion for judgment on the administrative record, the court is required to determine whether the plaintiff has met its burden of proof to show that the relevant federal agency decision was without a rational basis or not in accordance with the law. *See Bannum, Inc.* v. *United States*, 404 F.3d 1346, 1353-54 ("RCFC [52.1] requires the [United States] Court of Federal Claims, when making a prejudice analysis in the first instance, to make factual findings from the record evidence as if it were conducting a trial on the record."); *see also Afghan Am. Army Servs. Corp.* v. *United States*, 90 Fed. Cl. 341, 355 (2009) ("In reviewing cross-motions for judgment on the administrative record, the court must determine 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'") (citations omitted). The existence of a material issue of fact, however, does not prohibit the court from granting a motion for judgment on the administrative record, nor is the court required to conduct an evidentiary proceeding. *See Bannum*, 404 F.3d at 1355 ("The court must distinguish the trial court's judgment on the administrative record from a summary judgment requiring the absence of a genuine issue of material fact.").

### 2. Whether The Saint Lawrence Seaway Development Corporation's Determination That Plaintiff's Bid Was Nonresponsive Was Arbitrary And Capricious.

#### a. The Plaintiff's Argument.

Plaintiff first argues that SLSDC's determination that its bid was nonresponsive was arbitrary and capricious because the basis of the agency's determination violates Occupational Safety and Health Administration ("OSHA") regulations. Pl. Mot. at 7. Under OSHA regulations, any "[l]ive parts to which an employee may be exposed shall be deenergized before the employee works on or near them, unless the employer can demonstrate that deenergizing introduces additional or increased hazards or is infeasible due to equipment design or operational limitations." 29 C.F.R. § 1910.333(a)(1). SLSDC concluded that the GE panelboards proposed by Dow Electric were not considered to be technically equivalent to the Square-D panels specified in the Solicitation because of safety concerns about working on the panels when they are in an energized state. AR 324-25. These safety concerns, however, could be alleviated by complying with OSHA regulations that require the panels be deenergized prior to an employee working on them. Pl. Mot. at 7-8. Therefore, SLSDC's reasons for determining that Dow Electric's bid was nonresponsive were in violation of OSHA regulations. *Id.* at 7-8.

In addition, Plaintiff argues that SLSDC's determination was arbitrary and capricious because, although the Solicitation called for the use of "industrial-grade, Square D, I-Line or equal factory assembled 480 volt panelboards," AR 44, nothing in the Solicitation indicated that the panelboards had to be capable of being worked on while in an energized state. Pl. Mot. at 9. Therefore, SLSDC's determination that Dow Electric's bid was nonresponsive because the GE panelboards could not be safely worked on in an energized state was arbitrary and capricious. *Id*. at 9.

### b. The Government's Response.

The Government responds that SLSDC's determination that Plaintiff's bid was nonresponsive was supported by substantial evidence, and therefore not arbitrary and capricious. Gov't Mot. at 16. First, in the September 28, 2010 letter from the CO to Plaintiff, she gives four reasons why the GE Bolt-On panelboards proposed by Dow Electric were not equal to the Square D I-Line panelboards specified in the Solicitation. *Id*. at 16-18.

Second, SLSDC made this determination after almost three weeks of communicating with Plaintiff's technical representatives and reviewing the additional information they supplied to SLSDC. Gov't Mot. at 16-17.

Third, under the Federal Acquisition Regulations ("FAR"), "[t]o be considered for award, a [sealed] bid must comply in all material respects with the invitation for bids. Such compliance enables bidders to stand on an equal footing and maintain the integrity of the sealed bidding system." 48 C.F.R. § 14.301(a). In this case, the requirement that the successful bidder use "Square D, I-Line or equal factory assembled 480 volt panelboards" was a material element of the Solicitation. AR 44. The FAR also requires that "[a]ny bid that does not conform to the applicable specifications shall be rejected unless the invitation authorized the submission of alternate bids and the supplies offered as alternates meet the requirements specified in the invitation." 48 C.F.R. § 14.404-2(b). In this case, after careful review, the GE panelboards proposed by Dow Electric did not meet the Solicitation's requirements. Therefore, SLSDC was required to reject Plaintiff's bid as nonresponsive. Gov't Mot. at 18.

Even if SLSDC's rejection of Plaintiff's bid was improper, Plaintiff cannot show that it was prejudiced by any such error because SLSDC could have rejected Plaintiff's bid for several other reasons. Gov't Mot. at 18. For example, under the FAR, any descriptive literature required by a solicitation must be received by the time specified in the Solicitation, or the agency may reject a bid. *See* 48 C.F.R. § 52.214-21(d) ("If the bidder fails to submit descriptive literature on time, the Government will reject the bid. . . ."). Because Plaintiff failed to submit the specifications for their proposed materials with its bid, as required by the Solicitation, SLSDC could have rejected Plaintiff's bid at that time. Gov't Mot. at 19. In addition, SLSDC could have rejected Plaintiff's bid because many of the materials initially proposed by Plaintiff were not compatible with the electrical system in the Eisenhower and Snell locks. *Id*. at 20.

Finally, the Government argues that SLSDC's determination of nonresponsiveness was not based upon an alleged violation of OSHA regulations. Gov't Mot. at 21. As an initial

matter, SLSDC had no intention of violating OSHA Regulation 1910.333(a)(1). Gov't Mot. at 21, n.7. SLSDC elected to require Square-D panelboards, in part, because the dark and cramped conditions of the Eisenhower and Snell locks may make it necessary to work on the panelboards in an energized state, and the Square-D panelboards are safer in that situation. *Id*. After reviewing the specifications of the GE panelboards, SLSDC determined that they were not as safe to work on in an energized state as the Square-D panelboards. *Id*. at 22-23. Even if this was not the case, however, SLSDC provided two additional reasons for why the GE panelboards were not equivalent to the Square D panelboards that are unrelated to working on the panelboards in an energized state. *Id*.

### c. The Court's Resolution.

FAR 14.301(a) requires a bid to "comply in *all* material respects with the [solicitation]." 48 C.F.R. § 14.301(a) (emphasis added). In this case, the Solicitation required the use of "Square D, I-Line or equal factory assembled 480 volt panelboards." AR 44. Plaintiff, however, did not submit a proposal using Square D, I-Line panelboards. After several rounds of discussions with Plaintiff,[5] SLSDC determined that the GE panelboards did not "meet the requirements specified in the [Solicitation]." 48 C.F.R. § 14.404-2(b).

After consulting with GE, SLSDC provided Dow Electric with a detailed explanation as to why its proposed materials did not meet the agency's requirements. AR 324-25. In fact, rather than evidencing irrational, arbitrary, or capricious reasoning, the Administrative Record shows that SLSDC made a good faith effort to work with Dow Electric to ascertain whether its bid could be considered responsive before making the determination that the bid was nonresponsive. *See*, *e.g.*, AR 141, 300-03, 305, 314.

In addition, the Solicitation did not violate OSHA Regulation 1910.333(a)(1), which requires live electrical parts to be deenergized prior to being worked on by an employee. This requirement may be waived if deenergizing the electrical equipment would lead to "additional or increased hazards," such as "interruption of life support equipment, deactivation of emergency alarm systems, shutdown of hazardous location ventilation equipment, or removal of illumination for an area." 29 C.F.R. § 1910.333(a)(1), Note 1. Nothing in the Administrative Record indicates that SLSDC plans to require employees work on energized panelboards in a manner that would violate OSHA Regulation 1910.333(a)(1).

For these reasons, the court has determined that SLSDC's determination that Plaintiff's bid was nonresponsive was not arbitrary and capricious.

---

[5] The Government, however, was not required to participate in any discussions with Plaintiff. *See* 48 C.F.R. § 14.101(d) (In a sealed bid procurement, "[b]ids shall be evaluated without discussions.").

### 3. Whether the Saint Lawrence Seaway Development Corporation Improperly Refused To Allow Plaintiff To Amend Its Bid To Use Materials Specified In The Solicitation.

#### a. The Plaintiff's Argument.

Plaintiff argues that, after its bid was erroneously determined to be nonresponsive, SLSDC should have provided Plaintiff with an opportunity to substitute the materials specified in the Solicitation at the same bid price. Pl. Mot. at 9. Contrary to the Government's contention that allowing Plaintiff to do so would be unfair to other bidders, Plaintiff would not gain any advantage from being allowed to substitute the materials specified in the Solicitation. *Id*. In addition, there is no FAR provision that authorizes an agency to disqualify a bidder who, after learning that its proposed alternative materials do not meet a solicitation's specifications, offers to use the specified equipment at the same price. *Id*. at 9-10. By not allowing Dow Electric to substitute the specified equipment, SLSDC paid $80,000 more for the Project, rendering its decision to be *ipso facto* arbitrary and capricious.

#### b. The Government's Response.

The Government responds that there is no evidence in the record that SLSDC refused to allow Plaintiff to resubmit a new bill of materials using the specified Square-D equipment. Gov't Mot. at 26. Although Plaintiff offered to substitute different GE materials at no additional cost to SLSDC, Plaintiff has proffered no evidence that it offered to substitute the specified Square-D equipment. AR 309-11.

Even if Plaintiff's claim was factually supported, FAR 52.214-19(a) prohibits Plaintiff from substituting materials. Gov't Mot. at 14.[6] FAR 52.214-19(a) requires an agency to evaluate sealed bids "without discussions and [to] award a contract to the responsible bidder whose bid, conforming to the solicitation, will be most advantageous to the Government, considering only price and . . . price-related factors." 48 C.F.R. § 52.214-19(a). Since Plaintiff's bid did not conform to the Solicitation, SLSDC was required to reject it. Gov't Mot. at 15. In addition, allowing Plaintiff to modify its bid after the deadline set in the Solicitation would violate the FAR. *See* 48 C.F.R. § 14.304(b)(1).[7]

---

[6] In its February 11, 2011 Cross-Motion, the Government proffers this argument in support of a Motion To Dismiss for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(6), as well as in support of a Motion For Judgment On The Administrative Record, pursuant to RCFC 52.1. Gov't Mot. at 15-16, 26-28. The court has determined that this argument is best characterized as grounds for Judgment on the Administrative Record, pursuant to RCFC 52.1, and will consider the argument as such.

[7] FAR 14.304(b)(1) provides:

Any bid, modification, or withdrawal of a bid received at the Government office designated in the [solicitation] after the exact time specified for receipt of bids is 'late' and will not be considered[.]

Likewise, SLSDC did not have the authority to allow Plaintiff to cure the defects in its bid by substituting Square-D equipment. Gov't Mot. at 26. An agency may only "waive informalities or minor irregularities in bids received." 48 C.F.R. § 52.214-19(b); *see also* 48 C.F.R. § 14.405 (defining a "minor informality or irregularity [as] one that is merely a matter of form and not of substance," and as an "immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders"). Because the materials used in a construction project are material to the price and quality of the project, an agency does not have the authority to allow a bidder to substitute materials after the submission of its bid. Gov't Mot. at 27. Even if SLSDC had authority to allow Plaintiff to substitute materials in its bid after submission, doing so would be prejudicial to other bidders and undermine the sealed bidding process. *Id*.

### c. The Court's Resolution.

As a threshold matter, the Administrative Record does not evidence that Plaintiff offered to substitute the specified Square-D materials at any time, nor has Plaintiff sought to supplement the record with any such evidence.

Assuming, *arguendo*, that the Administrative Record contained such evidence, Plaintiff's claim would nevertheless fail. In a sealed bid solicitation, FAR 14.101 requires an agency to evaluate bids "without discussions." 48 C.F.R. § 14.101(d). Therefore, SLSDC was not obligated to participate in any discussions with Plaintiff once Plaintiff's bid was submitted.

In addition, FAR 14.304(b)(1) allows an agency to reject a proposed modification of a bid after it is received, unless the proposed modification would not "unduly delay the acquisition" and satisfies one of two narrow exceptions that are not applicable in this case. 48 C.F.R. § 14.304(b)(1).[8] Even if one of these exceptions applied, allowing Plaintiff to modify its bid could unduly delay the project that was to commence on September 30, 2010. AR 39. Therefore, SLSDC was not obligated to allow Plaintiff to submit a modified bid once it determined that Plaintiff's initial bid was nonresponsive.

Accordingly, the court has determined that the Government is entitled to Judgment on the Administrative Record as to Plaintiff's claim that SLSDC improperly refused to allow Plaintiff to substitute Square-D materials.

### IV. CONCLUSION.

For these reasons, Plaintiff's January 28, 2011 Motion For Judgment On The Administrative Record is denied. The Government's February 11, 2011 Cross-Motion For

---

48 C.F.R. § 14.304(b)(1).

12

Judgment On The Administrative Record is granted.  The Clerk of the Court for the United States Court of Federal Claims is directed to enter judgment on behalf of the Government.

    **IT IS SO ORDERED.**

                                                                               s/ Susan G. Braden  
                                                                               **SUSAN G. BRADEN**  
                                                                               **Judge**